IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America<br><br>v.<br><br>Anthony Augustus Thomas | Crim. No. 4:05-cr-00568-TLW<br><br>**ORDER** |

This matter comes before the Court for consideration of Defendant Anthony Augustus Thomas' *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 150. For the reasons below, his motion is **DENIED**.

## **PROCEDURAL BACKGROUND**

On September 13, 2004—notably, while on federal supervised release—Thomas committed a violent offense, specifically, an armed robbery in Darlington, South Carolina. *See* Presentence Investigation Report ("PSR"), ECF No. 65, ¶¶ 7 & 31. On September 8, 2005, Thomas was convicted after a two-day jury trial of (1) Hobbs Act robbery in violation of 18 U.S.C § 1951(a) and (2) use of a firearm during a crime of violence in violation of § 924(c)(1). ECF Nos. 43, 48 & 53. At sentencing, Thomas was classified as a career offender because of several prior criminal convictions. PSR ¶¶ 49–51. His advisory guideline range was 360 months to Life, and the Court imposed a sentence of 420 months imprisonment. ECF Nos. 64 & 66.

Thomas appealed his sentence and conviction, both of which were affirmed by the United States Court of Appeals for the Fourth Circuit. ECF Nos. 83 & 84. He then filed a petition for habeas corpus pursuant to 28 U.S.C. § 2255, which was denied by this Court in a detailed order. ECF Nos. 98, 102 & 103. Subsequently, the

Fourth Circuit granted Thomas' request for permission to file a successive § 2255 petition, which was then denied by this Court. ECF Nos. 120, 121, 134, 137 & 146. Thomas appealed this Court's denial of his second § 2255 petition, and the Fourth Circuit denied him a certificate of appealability, dismissing his appeal. ECF Nos. 137 & 146.

Thomas next filed the present motion for compassionate release pursuant to § 3582(c)(A)(i) based on his belief that the Court committed a guideline miscalculation at sentencing and his claim that he has been successfully rehabilitated. ECF Nos. 150 & 150–1. The Government opposes Thomas' motion. ECF No. 156. Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step

Act, compassionate release motions could be filed only by the Bureau of Prisons ("BOP"), so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

To provide context to both Thomas' motion and the Court's decision, the Court will first review the offense conduct underlying Thomas' present sentence before reviewing the parties' arguments and conducting its own analysis of the issues at play.

I. **THE OFFENSE CONDUCT**

On September 13, 2004, while on federal supervised release for possession with intent to distribute and distribution of heroin, Thomas committed an armed robbery of the Express Stop store located in Darlington, South Carolina. PSR ¶¶ 7 & 31. Thomas entered the store wearing blue coveralls, a black and burgundy wig, and a white bandana around his face. *Id.* ¶ 14. Once inside, Thomas approached the store clerk and pointed a black handgun at her, demanding money. *Id.* Thomas placed a small bag on the counter, and the clerk placed $120.00 inside. *Id.* Thomas next demanded the clerk show him to the store's safe. *Id.* The clerk informed him that the store did not have one. *Id.* At gun point, Thomas forced the clerk into the rear office and told her not to turn around or call anyone. *Id.* He then fled the store on a blue bicycle. *Id.*

A few minutes later, Sargent Michael Austin of the Darlington Police Department received a call that the Express Stop had been robbed. *Id.* ¶ 7. Sgt. Austin was advised that the suspect was riding a blue bicycle, armed with a handgun, and wearing blue coveralls, a white scarf over his face, and a black and burgundy wig. *Id.* ¶ 8. Shortly thereafter, Sgt. Austin located Thomas at an intersection near the Express Stop, wearing the exact same clothing worn during the robbery. *Id.*

Sgt. Austin pulled alongside Thomas' bicycle and instructed him to stop. *Id.* ¶ 9. Thomas began to peddle faster, and Sgt. Austin nudged his patrol vehicle into the bicycle, to prevent Thomas' escape. *Id.* Thomas fell from the bike and stood up as

Sgt. Austin excited his vehicle. *Id.* ¶ 10. He dropped a leather bag and the white scarf and fled on foot. *Id.* Sgt. Austin then chased Thomas in an attempt to take him into custody. *Id.* ¶ 11. During the foot chase, Sgt. Austin saw Thomas pull out what appeared to be a firearm from his waist band. *Id.* Due to concerns about his own safety, Sgt. Austin drew his service weapon and fired at Thomas, who was not struck. *Id.* Thomas managed to escape, hiding behind a residence. *Id.* Additional officers arrived to aid Sgt. Austin. *Id.* Together they set up a perimeter and called in a Darlington County Sherriff's Office dog team to track Thomas because of concerns over officer and civilian safety, since they knew he was armed. *Id.*

After the dog team arrived, Thomas was located hiding behind a vehicle in a carport. *Id.* ¶ 12. His firearm was later located under a vehicle along the same path he had fled from Sgt. Austin. *Id.* ¶ 13. At the time of his arrest, Thomas was still wearing the same blue coveralls he had worn during the robbery. *Id.* Officers searched the leather bag Thomas dropped and found the $120.00 he had stolen from the Express Stop. *Id.*

## II.     THE PARTIES' ARGUMENTS

Before addressing the merits of Thomas' motion for compassionate release, the Court will first review the arguments raised by both Thomas and the Government. *See* ECF Nos. 150 & 156.

### A.     *Thomas' Arguments in Support of His Motion*

Thomas asserts two grounds which he posits are "extraordinary and compelling" reasons justifying either his release or a reduction in his sentence. They are (1) that his 420-month sentence is the result of an improper guideline

calculation and (2) that he has been successfully rehabilitated. ECF No. 150–1 at 6–10. He also asserts that the § 3553(a) sentencing factors weigh in favor of relief. *Id.* at 10–13. Additionally, Thomas requests the appointment of counsel. *Id.* at 13.

### B.   *The Government's Opposition*

The Government opposes Thomas' motion on the independent grounds that he has not identified "extraordinary and compelling reasons" warranting a reduction and because the § 3553(a) factors weigh against his release, since he still poses a significant danger to the public. ECF No. 156 at 5–10. As to Thomas' asserted grounds for compassionate release, the Government maintains that he cannot meet his burden because (1) his guidelines miscalculation "argument is grounded upon a fundamental misunderstanding of the basis of his current sentence of imprisonment" and (2) rehabilitation is not a basis for relief under § 3582. *Id.* at 6–7.

### III.   THE COURT'S REVIEW

The Court will first take up Thomas' request for the appointment of counsel before moving on to an analysis of whether he has presented "extraordinary and compelling reasons" warranting a reduction in his sentence before considering whether the § 3553(a) factors weigh in favor of his release.[1]

### A.   *Appointment of Counsel*

Thomas requests that the Court appoint him counsel in connection with this post-conviction § 3582 proceeding. It is well settled that "a criminal defendant has

---

[1] The Government does not contest that Thomas has exhausted his administrative remedies. Accordingly, the Court will proceed to analyzing Thomas' motion on the merits.

no right to counsel beyond his first appeal." *Coleman v. Thompson,* 501 U.S. 722, 756 (1991); *United States v. Coleman*, No. CR 3:01-506-JFA, 2020 WL 8258249, at *1 (D.S.C. July 30, 2020) ("As an initial matter, there is no general constitutional right to appointed counsel in post-conviction proceedings."). Although due process mandates the appointment for certain post-conviction proceedings, a motion to reduce a sentence pursuant to § 3582(c) does not fit into this category. *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000). The Court has discretion to appoint counsel in proceedings under § 3582(c) if the interests of justice so require. *Id.*

Thomas' request for the appointment of counsel is only raised in his prayer for relief. ECF No. 150–1 at 13. Thomas requests, as an alternative remedy to granting his motion, that the Court "appoint counsel to represent him during the prosecution of this motion in the interest of justice." *Id.* In review of his motion, the Court finds that Thomas is capable—and has proven capable—of prosecuting this action without the assistance of counsel. Further, the Court finds that he has not otherwise established that the interests of justice require the appointment of counsel in this case. Thomas' motion raises a number of issues, which will be addressed on the merits by this Court. Accordingly, Thomas' request for the appointment of counsel is denied.

## B.   *The "Extraordinary and Compelling Reasons" Standard.*

Thomas asserts two bases for establishing "extraordinary and compelling reasons." They are (1) that the Court committed a guideline miscalculation in

sentencing him to 35 years for his § 924(c) conviction, and (2) that he has been successfully rehabilitated. The Court will address each of these arguments in turn.

      i.    <u>*The Court did not commit a guidelines miscalculation.*</u>

Thomas asserts that his 420-month sentence is the result of a guideline miscalculation. ECF No. 150–1 at 2. Specifically, he suggests that the Court sentenced him to 420 months based on the application of 18 U.S.C. § 924(c)(1)(B)(ii), which prohibits the use of a machine gun during a crime of violence and carries a 30-year statutory minimum sentence. *Id.* at 6–9. Thomas notes that application resulted in a guidelines miscalculation because, as noted in the Indictment, Thomas used a Smith & Wesson .357 handgun, not a machine gun. *Id.*; ECF No. 150–2. After reviewing Thomas' arguments and the record before it, the Court concludes that Thomas cannot establish "extraordinary and compelling reasons" on this basis because his 420-month sentence was not the result of a guidelines miscalculation.

First, Thomas' sentence was not based on the application of the statutory minimum for possession of a machine gun as he suggests. No fact indicates any use of a machine gun either in the commission of the robbery, during his escape, or at any other time. No guideline calculation in the record references a machine gun.

Thomas' status as a career offender was the basis for the guideline calculation in his case. As noted in the PSR, Thomas was classified as a career offender based on his prior convictions for (1) voluntary manslaughter and (2) possession with intent to distribute heroin and distribution of heroin in violation of 18 U.S.C. § 841(a)(1). *See* PSR ¶¶ 25, 29, 33 & 45.

His instant federal conviction was for Hobbs Act robbery in violation of 18 U.S.C. § 1951. ECF Nos. 54 & 66. Because Thomas was a career offender, his guideline range under U.S.S.G. § 4b1.1(c)(2)(B) and 4B1.1(c)(3) was 360 months to Life. *Id.* ¶¶ 50–51. That guideline range, § 4B1.1(C)(3), sets forth a career offender table for violation of 18 U.S.C. § 924(C). *See* U.S.S.G. § 4B1.1(C)(3). Thomas was convicted of § 924(c) in Count 3 of the indictment. ECF Nos. 54 & 66. His sentence of 420 months was in this range.

For these reasons, because his sentence was not the result of a guideline miscalculation based on his mistaken assertion regarding use of a machine gun, the Court concludes that Thomas cannot establish "extraordinary and compelling reasons" on this basis. Even if Thomas could establish an "extraordinary and compelling reasons" in connection with this claim of a guideline miscalculation, no relief is warranted.

    ii.    <u>*Thomas' rehabilitation is not an "extraordinary and compelling reason" warranting a reduction in his sentence.*</u>

Thomas' second basis for compassionate release asserts that his post sentencing rehabilitation constitutes an "extraordinary and compelling reason" warranting a reduction in his sentence. ECF No. 150–1 at 3. While appropriate for considering a § 3582 claim, the Court concludes that rehabilitation is not a basis for establishing "extraordinary and compelling reasons" warranting a reduction an inmate's sentence or his release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

That said, the Court will consider Thomas' efforts at rehabilitation when weighing the § 3553(a) sentencing factors.

### C. *The Court's review of the § 3553(a) factors*

Assuming Thomas had established "extraordinary and compelling reasons," the Court concludes that it would still be appropriate to deny his motion based on an analysis and balancing of the § 3553(a) factors.[2]

As part of the § 3553(a) factors, it is appropriate to again highlight the facts surrounding Thomas' instant offenses, which brought him into federal court for a second time. Thomas committed an armed robbery of the Express Shop in Darlington, South Carolina. During this robbery, he pointed a firearm at the store clerk. After the robbery, he refused to comply with a police officer's instructions to pull over. He fled on foot. When the officer pursued Thomas, he attempted to pull out the firearm used in the robbery. Because he was armed, a dog team was required to both track Thomas down and locate the firearm he discarded in a residential area. After a review of the facts of the instant offenses, the Court concludes that "the nature and circumstances of the offense" weigh against a reduction in Thomas' sentence.

The Court next looks to "the history and characteristics of the defendant," which reveals Thomas' significant—and violent—criminal history. In 1977, at age 19, Thomas was convicted of grand larceny of a beer truck. PSR ¶ 22. The next year, at 20, Thomas was convicted of grand larceny and receiving stolen goods. *Id.* ¶ 23.

---

[2] The Court has balanced those factors given the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

At 23, he was arrested in New Jersey as a fugitive from justice—specifically, as a result of a murder charge he faced in South Carolina. *Id.* ¶ 24. Thomas was returned to South Carolina. *Id.* ¶ 25.

Thomas was convicted of voluntary manslaughter as noted in paragraph 25 of the PSR. *Id.* The PSR, in paragraph 25, references both a guilty plea and trail transcripts. It is not clear as to whether Thomas pled or went to trial. However, the offense he committed was violent and cold blooded. The facts surrounding this offense warrant further discussion here. Thomas approached the victim and attempted to rob him at gunpoint. *Id.* When the victim refused to give Thomas his money, Thomas shot him. *Id.* The victim fell to his knees—*begging* for his life. *Id.* The victim stated, "you've already shot me once. Please don't shoot me again." *Id.* Despite his pleas, Thomas proceeded to shoot the victim four more times, killing him. *Id.* There was no justification for this killing. Thomas received a 30-year state sentence for this conduct. *Id.* This prior conviction makes it clear that Thomas is violent and dangerous. The victim was robbed, shot once, fell, and begged for his life. Thomas shot him four additional times, resulting in his death.

Thomas' criminal conduct continued after his stint in prison for killing the robbery victim. In 1999, at age 41, Thomas was convicted of possession of a long-blade knife. *Id.* ¶ 27. Regarding this offense, patrol officers of the Charleston Police Department spotted Thomas standing on a street corner with a large black knife in his hand. *Id.* The officers pulled over and commanded Thomas to drop the knife. After three commands, Thomas finally complied and surrendered the blade. *Id.* The

next year, at age 42, Thomas was convicted of malicious damage to real property. *Id.* ¶ 28.

In 2000, Thomas was indicted in federal court as a member of a drug conspiracy. *Id.* ¶ 29. He pled guilty to possession with intent to distribute heroin and distribution of heroin and was sentenced to a 12-month term of imprisonment followed by 3 years of supervised release. *Id.* Notably, he committed the instant federal offense of Hobbs Act robbery while armed with a pistol during his term of federal supervised release. *Id.* In light of his significant criminal history the Court concludes that "the history and characteristics of the defendant" weigh substantially against a reduction in Thomas' sentence.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against a reduction for similar reasons. Despite several encounters with the law resulting in significant prison time, Thomas continued to engage in criminal conduct. His time in prison—including the sentence he served for voluntary manslaughter—did not deter him from committing further criminal conduct. Accordingly, the Court finds that the sentence imposed was—and is—necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence. Given Thomas' propensity for repetitive, violent conduct, as embodied by his voluntary manslaughter conviction before his federal convictions, the Court finds that, if released, he would pose a significant risk to the safety of others based on the violent conduct outlined above.

The Court next turns to §§ 3553(a)(3)-(6)—the kinds of sentences available,

the guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. Thomas received a guideline range of 360 years to Life. Thomas' guideline range would remain unchanged because, if sentenced today, he would remain a career offender based on his convictions for (1) voluntary manslaughter,[3] (2) possession with intent to distribute and distribution of heroin,[4] and (3) Hobbs Act robbery in conjunction with a § 924(c) violation.[5] Accordingly, considering Thomas' violent conduct, his status as a career offender, and his continued disrespect for the law the Court finds that this sentence is both reasonable and necessary. It has thus considered §§ 3553(a)(3)-(6) and concludes that these factors do not favor a reduction in Thomas' sentence.

Finally, although the Court's analysis and balancing of the § 3553(a) factors lead the Court to conclude a reduction in Thomas' sentence is inappropriate, the

---

[3] Courts in this district have concluded that it remains a valid predicate. *See Ceasar v. United States*, No. 4:06-CR-01030-RBH-1, 2018 WL 3009099, at *3 (D.S.C. June 15, 2018) ("Moreover, this Court has specifically held that South Carolina voluntary manslaughter is categorically a violent felony"). In *Williams v. United States*, the court outline why voluntary manslaughter is a valid predicate for both career offender classification and for classification as an armed career criminal under the Armed Career Criminal Act ("ACCA"):

> Voluntary manslaughter is defined in South Carolina as the unlawful killing of a human being in the sudden heat of passion upon sufficient legal provocation. *State v. Cole*, 338 S.C. 97, 525 S.E.2d 511, 513 (S.C. 2000). The offense of voluntary manslaughter involves intent on the part of the perpetrator. *State v. Blassingame*, 271 S.C. 44, 244 S.E.2d 528, 529 (S.C. 1978). The Fourth Circuit noted that "one cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another." *In re Irby*, 858 F.3d 231, 238 (4th Cir. 2017). Therefore, voluntary manslaughter has, as an element, the intentional use of physical force against another. *See White v. United States*, No. 4:11-CR-02164-RBH-1, 2017 WL 4410253, at *4 (D.S.C. Oct. 4, 2017). As such, voluntary manslaughter qualifies as a predict offense under the ACCA. Movant's argument is without merit.

*Williams v. United States,* No. CR 3:13-1039-MBS, 2018 WL 806659, at *3 (D.S.C. Feb. 9, 2018).
[4] *See United States v. Groves*, 65 F.4th 166, 168 (4th Cir. 2023) (concluding that distribution offenses are controlled substances under § 841(a)(1)).
[5] *See United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) (holding that Hobbs Act robbery categorically qualifies as a crime of violence to support a § 924 conviction).

Court has reviewed the filings submitted by Thomas in support of his claim of rehabilitation. The Court notes his participation in rehabilitation programs and other educational opportunities provided by the Bureau of Prisons. However, based on its review of the record before it, Thomas' criminal history, and for the reasons set forth in this order, the Court finds that—even if Thomas had established "extraordinary and compelling reasons"—the § 3553(a) factors weigh heavily against a reduction in his sentence.

## CONCLUSION

In summary, Thomas has not established "extraordinary and compelling reasons" warranting a reduction in his sentence. Even if he had done so, his motion would still be denied based on the Court's analysis and balancing of the § 3553(a) factors. He has a clear propensity for violence. His prior incarceration and supervision have not deterred him from committing violent crime. Therefore, the Court finds, based on the record outlined in detail in this order, that a reduction in Thomas' sentence is not appropriate. Accordingly, his motion, ECF No. 150, is **DENIED.**

**IT IS SO ORDERED.**

                                             *s/Terry L. Wooten*
                                        Senior United States District Judge

August 31, 2023
Columbia, South Carolina